IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STARR INDEMNITY & <br> LIABILITY COMPANY <br><br> Plaintiff, <br><br> vs. <br><br> EXXON MOBIL CORPORATION <br><br> Defendant. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | C.A. No. _____ <br> Rule 9(h) |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, Starr Indemnity & Liability Company ("Starr"), by and through its attorneys, brings this Complaint in admiralty for declaratory judgment against Exxon Mobil Corporation ("Exxon"), and states as follows:

### I.
### JURISDICTION AND VENUE

1. This is a suit for a declaration of rights under a marine insurance policy, and is thus a case within the admiralty and maritime jurisdiction of this Honorable Court within the meaning of 28 U.S.C. § 1333 and Rule 9(h) of the Federal Rules of Civil Procedure.

2. Venue is proper in this district because Exxon is subject to service of process in this district.

### II.
### PARTIES

3. Starr is a admitted insurer in the State of Texas.

4. Exxon is a corporation organized under the laws of the State of New Jersey with its principal place of business in Texas. Exxon can be served by serving its registered agent for

service of process, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th St., Suite 620, Austin, Texas, 78701-3218.

## III.
## BACKGROUND

*A.     The Insurance Policies*

5.     Starr, through its subsidiary, Starr Marine Agency, issued a Bumbershoot Liabilities insurance policy ("the Bumbershoot policy") to Savage Companies ("Savage").  The Bumbershoot policy provides following-form liability coverage in the amount of $25 million for liabilities insured under scheduled underlying policies.  The scheduled underlying policies are a Marine General Liability/Terminal Operators Liability/Charterers Legal Liability/Stevedores Legal Liability policy, two Hull and Machinery (H&M) policies, two Protection and Indemnity (P&I) policies and two Vessel Pollution policies; all insuring one or more of the Savage group of companies..  The Bumbershoot policy also provides coverage for liabilities not covered by the scheduled underlying policies that arise out of protection and indemnity risks covered by the United Kingdom Mutual Steam Ship Assurance Association, Limited; for general average, collision liabilities, salvage, salvage charges, and sue and labor; and for other liabilities for personal injury and property damage that are not excluded by the underlying insurances, subject to all the provisions of the Bumbershoot policy.

6.     The Marine General Liability policy referred to above is National Union Fire Insurance Company of Pittsburgh, PA (National Union), Policy No.: 051769615, ("the National Union Marine General Liability policy").  It covers Terminal Operators Liability, Tankerman's Legal Liability, and Stevedore's Legal Liability, and contains a Refinery Exclusion.  The National Union Marine General Liability policy corresponds to another Commercial Marine General Liability policy, issued by Chartis Europe Limited ("the Chartis Marine General Liability

policy"). Chartis Europe Limited and National Union are related companies. The Chartis Marine General Liability policy, Policy No.: CU001150b, also contains a Refinery Exclusion (discussed below) and covers Terminal Operators Liability, Tankerman's Legal Liability, and Stevedore's Legal Liability. The Named Assured in both the National Union Marine General Liability policy and the Chartis Marine General Liability policy is described in as a "Storage/Terminal Operator and as set forth in the Named Insured Schedule," and the insured hazards are described as "Terminal Operator Operations," "Tankerman's Legal Liability," and "Stevedores Legal Liability." Both the National Union Marine General Liability policy and the Chartis Marine General Liability policy provide coverage in the amount of $1 million per occurrence.

7.      Savage was also insured under a Commercial General Liability policy issued by National Union. This policy, Policy No.: GL972-50-90, ("the National Union Commercial General Liability policy") provides coverage in the amount of $4,500,000 per occurrence, above a $500,000 Self Insured Retention (SIR). This contains none of the Marine coverages. Unlike the National Union Marine General Liability policy and the Chartis Marine General Liability policy, it contains a Watercraft exclusion, but has no Refinery Exclusion.

8.      Savage was also insured under a Commercial Umbrella Liability Policy issued by National Union ("the National Union Commercial Umbrella policy"). The National Union Commercial Umbrella policy provides coverage in the amount of $25 million in excess of scheduled underlying insurance. The National Union $4,500,000 Commercial General Liability policy is listed on the Schedule of Underlying Insurance included as part of the National Union Commercial Umbrella policy; neither the Chartis Marine General Liability policy, the National Union Marine General Liability policy nor the Bumbershoot policy are listed on the schedule.

9. Starr Marine's Bumbershoot policy contains a Special Condition that provides as follows:

    (a) **ADDITIONAL ASSURED/WAIVER OF SUBROGATION**

    It is understood and agreed to the extent that the Named Assured is obligated by contract to name any one person or organization as Additional Assureds hereunder, the Underwriters agree that such persons or company shall be considered as Additional Assureds (and waive rights of subrogation) but only with respect to operations performed by or on behalf of the Named Assureds, and which would in any event be covered under this insurance and shall not operate to increase the limit of liability hereunder.

10. Absolute Exclusion (d) to the Bumbershoot policy provides that it excludes coverage for liability arising

    directly or indirectly in consequence of the actual or potential discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, petroleum products or derivatives, liquids or gases, waste materials, sewerage or other toxic chemicals, irritants, contaminants or pollutants into or upon land, atmosphere or any watercourse or body of water.

11. The Bumbershoot policy also contains an endorsement that provides that

    It is hereby understood and agreed the Bumbershoot Supplementary Clauses, II. ABSOLUTE EXCLUSION (d) shall not apply provided the Insured establishes that all of the following conditions have been met:

    A. The accident/occurrence was accidental and was neither expected nor intended by the Insured. An accident/occurrence shall not be considered unintended or unexpected unless caused by some intervening event, neither expected nor intended by the Insured.

    B. The accident/occurrence is identified as first commencing at a specific time and date during the term of this policy.

    C. The accident/occurrence became known to the insured's risk manager within 30 days after its commencement and is reported to Underwriters within 60 days thereafter.

    D. The accident/occurrence did not result from the insured's intentional or willful violation of any government statute, rule or regulation.

12.     The Bumbershoot policy provides that it "shall provide excess coverage on a 'following form' basis over the Scheduled Underlying Insurances, subject to all the provisions, limitations, terms, conditions, definitions and exclusions of this policy."

13.     The Chartis Marine General Liability and the National Union Marine General Liability policy contain a Refinery Exclusion Clause that provides as follows:

> It is understood and agreed that this policy excludes all liability, costs and expense arising from refining, processing, treatment, separation of Oil, Gas, Chemicals or Petrochemicals or any other products.  For the sake of this exclusion, the handling of refinery by-products is not excluded from coverage hereunder.

### B.     *The Exxon/Savage Contract*

14.     On January 12, 2013, Savage was allegedly performing services under a Standard Procurement Agreement for Downstream or Chemical Services with Incidental Goods dated June 1, 2007 ("the Exxon/Savage contract").  The Exxon/Savage contract was on a form drafted by Exxon, and contained the following provisions:

> 12. **Third-Party Indemnity.**  Purchaser [Exxon] and Supplier [Savage] shall indemnify, defend, and hold each other harmless from all claims, demands, and causes of action, asserted against the indemnitee by any third party (including, without limitation, Purchaser's and Supplier's employees) for personal injury death or loss of or damage to property resulting from the indemnitor's negligence, Gross Negligence or Willful Misconduct. Where personal injury, death or loss of or damage to property is the result of joint negligence, Gross Negligence or Willful Misconduct of Purchaser and Supplier, the indemnitor's duty of indemnification shall be in proportion to its allocable share of such joint negligence, Gross Negligence or Willful Misconduct.  If the party is strictly liable under law, the other party's duty of indemnification shall be in the same proportion that its negligence, Gross Negligence or Willful Misconduct contributed to the personal injury, death, or loss of or damage to property for which a party is strictly liable.  The term negligence in these General Terms and Conditions shall include active or passive negligence. "Gross Negligence" is defined by the law governing the Order, however, if such law does not define the term "gross negligence" it means any act or failure to act (whether sole, joint or concurrent) which seriously and substantially deviates from a diligent course of action or which is in reckless disregard of or indifference to the harmful consequences. Willful Misconduct

is defined by the law governing the Order; however, if such law does not define the term "willful misconduct" it means an intentional disregard of good and prudent standards of performance or of any of the terms of the Order.

13. **Gross Negligence and Willful Misconduct.**  Notwithstanding anything to the contrary in this Agreement or an Order, each party shall bear full responsibility, without limit, for its Gross Negligence or Willful Misconduct attributable to its managerial and senior supervisory personnel and, in no event, will a party be required to release or indemnity the other party for Gross Negligence or Willful Misconduct attributable to the other party's managerial or senior supervisory personnel.

14. **Insurance**
(a) Coverages.  Supplier shall carry and maintain in force at least the following insurances and amounts: (1) for all its employees engaged in performing services, worker's compensation and employers' liability insurance or similar social insurance in accordance with applicable law which may be applicable to those employees; (2) its normal and customary Commercial General Liability insurance coverage and policy limits or at least $2 million whichever is greater, providing coverage for injury, death or property damage resulting from each occurrence…Supplier and its insurer(s) providing coverage in this Section shall waive all rights of subrogation and/or contribution against Purchaser and its Affiliates to the extent liabilities are assumed by Supplier, except under any workers' compensation and employer' liability insurance, or similar social insurance in accordance with law which may be applicable to those employees of Supplier, when Purchaser elects to furnish or arrange same.

(b) Other Insurance Requirements.  The above obligations of Supplier and/or its insurers shall apply to Supplier's self-insured retentions and/or deductibles. The minimum insurance requirements as set forth above shall not limit or waive a party's legal or contractual responsibilities to the other party or others. Supplier's insurance shall apply to Supplier's indemnity and defense obligations under the Order except, with respect to Services subject to the law of the State of Texas, each party agrees to maintain the insurance and limits as specified in Sections 11, 12 and 13 above.

C.    *The Accident and Claims Giving Rise to the Dispute*

15.    On January 12, 2013, Savage was performing services for Exxon at Exxon's Baytown refinery cleaning a petroleum coking unit.  These operations were being conducted a considerable distance from any location used to load or service vessels, and did not in any way involve any marine operations or risks.  While this operation was underway, as the result of

negligence on the part of an Exxon employee, superheated water and steam were released and two Savage employees, Kevin Roberts and Arturo Munoz, suffered significant burns as a result of contact with the hot water and steam.

16. Mr. Roberts has filed suit against Exxon in the 165th District Court of Harris County, Texas.

17. By letter dated October 25, 2013, Exxon made demand on Savage's insurance brokers for coverage as an additional assured on the Chartis Marine General Liability policy. This letter was forwarded to Starr by letter dated November 19, 2013. This was the first notice that Starr had of the accident or the lawsuit filed by Mr. Roberts.

18. On November 20, 2013, Exxon made demand on Starr, claiming to be an additional assured on the Bumbershoot policy.

## IV.
## REQUEST FOR DECLARATORY JUDGMENT

19. For a variety of reasons, Starr does not believe that Exxon is entitled to coverage under the policy.

20. Savage's liability insurance program was structured with two distinct "towers" of insurance: (1) a marine tower that consists of the H&M policies, P&I policies, Vessel Pollution policies, the National Union Marine General Liability and the Chartis Marine General Liability policy as the base, with Starr Marine's Bumbershoot policy above that, and (2) a non-marine tower that starts with the $4,500,000 National Union Commercial General Liability policy and goes up through the National Union Umbrella policy. The Refinery Exclusion Clause was inserted in the Chartis Marine General Liability policy to exclude coverage under that policy and the other policies in the marine tower for refinery activities that were unrelated to the handling of refinery by-products for marine transportation.

21. The Refinery Exclusion Clause by its terms excludes coverage for liability arising out of the maintenance and cleaning of the coking unit that was being conducted at the time of the accident giving rise to this dispute.

22. The Exxon/Savage contract only requires Exxon to be named as an additional assured on Savage's Commercial General Liability insurance, and does not require Exxon to be named as an additional assured on any of Savage's marine policies, such as the Marine General Liability or Bumbershoot policies. The Bumbershoot policy only names parties as additional assureds "to the extent that the Named Assured is obligated by contract to name any one person or organization as Additional Assureds." Accordingly, Exxon is not an additional assured on the Bumbershoot policy.

23. The Bumbershoot policy expressly excludes coverage for liability arising "directly or indirectly in consequence of the actual or potential discharge, dispersal, release or escape of . . . vapors . . . liquids or gases, . . . [or] irritants into or upon land, atmosphere or any watercourse or body of water." The injuries to Messrs. Roberts and Munoz were the direct result of the release of steam and hot water, which are "vapors . . . liquids or gases . . . [and] irritants." Accordingly coverage for these claims is excluded.

24. The contract constitutes a division of responsibilities for accidents according to the relative negligence or intentional fault of the contracting parties. Under the contract the Purchaser (Exxon) indemnifies the Supplier (Savage) for Purchaser's negligence. Subrogation against, and contribution from, Exxon are waived by Savage's insurance companies only to the extent that liabilities are assumed by Savage. This allocation of responsibilities makes it clear that Exxon and Savage did not intend for Exxon to be an additional assured with respect to Exxon's own negligence. Since the Bumbershoot policy only provides coverage to additional

assureds "to the extent" that Savage was obligated to provide such coverage, Exxon is not entitled to coverage for its own negligence or intentional fault.

**WHEREFORE**, Starr prays that after due proceedings are had, that the Court issue a declaratory judgment that Exxon is not entitled to any coverage under the Bumbershoot policy, that Starr be awarded its costs, and that it have such other any further relief to which it may be entitled.

Respectfully submitted,

/s/ Harold K. Watson
Harold K. Watson
State Bar No. 20938500
Eugene W. Barr
State Bar No. 24059425
801 Travis Street, Suite 1910
Houston, Texas 77002
Telephone:  713-546-9800
Facsimile:  713-546-9806
watson@chaffe.com
barr@chaffe.com

ATTORNEYS FOR PLAINTIFF,
STARR INDEMNITY & LIABILITY COMPANY

OF COUNSEL:
CHAFFE McCALL, L.L.P.